# IN THE COURT OF APPEALS OF IOWA

No. 24-1348
Filed December 4, 2024

**IN THE INTEREST OF L.T.,**
**Minor Child,**

**A.T., Mother,**
 Appellant.

_____

 Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey, Judge.

 A mother appeals the termination of her parental rights. **AFFIRMED.**

 Dusty Lea Clements of Clements Law and Mediation, Newton, for appellant mother.

 Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

 Samuel K. Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

 Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

In its order terminating the mother's parental rights to her toddler, the juvenile court found she "is an excellent and loving mother to [the child] when she is sober, safe, and healthy." But after two decades of methamphetamine-use, the court found the mother's forty-one days of sobriety at an inpatient treatment facility came too late to avoid termination. The mother appeals,[1] challenging each of the steps in our termination analysis and the court's denial of her request for more time. We affirm.

**I.    Background Facts and Proceedings**

This forty-year-old mother of five children first used methamphetamine when she was just fourteen years old. She has been battling her addiction ever since. In the years before her youngest child was born in September 2022, the mother had her parental rights to two of her children terminated. Her other two children were placed in their father's care through a juvenile court bridge order.

At this child's birth, the mother tested positive for amphetamines and marijuana. The infant was also exhibiting signs of withdrawal, including tremors and irritability, and his umbilical cord tested positive for methamphetamine, amphetamines, and carboxy-THC. A report was made to the Iowa Department of Health and Human Services which, after conducting a child protective assessment, allowed the child to remain in the mother's custody under a safety plan that

---

[1] The father consented to the termination of his parental rights. He does not appeal, although he filed a statement supporting the mother's appeal. We have not considered that statement in our review of the mother's claims. *See In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (stating one parent cannot argue facts or legal positions relating to the other parent).

required a neighbor to supervise her contact with the infant. During the assessment, the mother told the child protective worker that "she is ready to get clean and she has never felt more ready to go to treatment."

The State filed a child-in-need-of-assistance petition in October, but because the mother was participating in services and doing well, the petition was dismissed in March 2023. The department continued to offer the mother services on a voluntary basis, but her participation soon declined. The mother was discharged from her mental-health therapy and started missing outpatient substance-use sessions. After dodging multiple drug tests, a sweat patch that was applied at the end of June came back positive for methamphetamine and amphetamines. The child was allowed to remain in the mother's custody under the neighbor's supervision, but the State filed a new petition in July. The next month, the mother entered an inpatient treatment facility that allowed her to bring the child with her. At her admission into treatment, the mother tested positive for methamphetamine, amphetamines, and MDMA. She was discharged after just two weeks for smoking a cigarette when she was not supposed to. Because the department disagreed with the reason for the mother's discharge, and "she had sobriety underneath her," the child was not removed from her custody.

In its order adjudicating the child as in need of the court's assistance, the juvenile court noted:

> Happily, [the mother] has been doing well since her reuse in July of 2023. [The child] remains in [the mother's] care due in large part to her efforts to course-correct. . . . [The mother] has a lot of reasons to be hopeful this case can close safely and successfully in the near future if she follows through with recommended services and expectations.

Unfortunately, the mother veered off course again in November when she relapsed on methamphetamine. The department's case manager reported that the mother "expresses a desire to be sober long term and states that even when she uses, she does not want to. [The mother] states that she knows that she has to take accountability for her choices but that her past is the contributing factor to her use." After this relapse, the child was removed from the mother's custody and placed with the neighbor.

In the months that followed, the mother inconsistently participated in substance-use and mental-health treatment. And she continued to have positive tests for methamphetamine, with the case manager noting that while the mother "had a month sober here and there, . . . it did not appear to be anything substantial." At the end of March 2024, the mother "shared she is wanting to do inpatient treatment." The mother was offered a spot at a facility in April, but she turned it down because she had obtained housing and was twenty-one days sober then. But the housing fell through, and the mother tested positive for methamphetamine again in May.

The State petitioned to terminate the mother's parental rights in June. At the end of that month, the mother entered an inpatient treatment facility with one-week of sobriety under her belt. By July, her counselor at the facility noted the mother's "dedication to treatment increases daily, and her insight is consistently growing." At a combined permanency and termination hearing, the department's case manager testified the mother was "doing really well in that program" and had progressed to overnight visits with the child. Yet the case manager recommended termination because of the mother's historical inconsistency in treatment:

> [The mother] has had quite some time to address the concerns leading to [the child's] removal and leading to the Department's involvement. She has been very inconsistent with treatment. [The mother] does amazing while she is in treatment. She does amazing with [the child] while she's sober. She's an amazing mom, and she loves her son very much. And the Department wishes that she could remain sober to have him in her care full-time, but [the child] deserves that permanency, and we have to look at the history of inability to remain sober.

Given that history, which included past failed attempts at substance-use treatment, the case manager did not believe that the child could be returned to her care in six months. The case manager explained that although the mother "has great insight" and "knows what she needs to do . . . there is something blocking her from being able to apply [her sobriety] long term."

The mother acknowledged her tough history, testifying: "I cannot expect people to think differently of me when I've never given them a reason to." But she maintained this time was different: "I love my kids. And any time I've been in this position—I've never been sitting in this stand—I usually run and would be using right now, but I'm fighting. Not just this, but I'm fighting my addiction. . . . I don't ever plan on using again."

While the juvenile court commended the mother "for her newly found journey to sobriety and recovery," the court found it was not enough to overcome her past failed attempts at sobriety:

> Unfortunately, the Court lacks evidence to find it is likely [the mother] will maintain her sobriety and stability once she leaves [inpatient treatment] and reenters the community. [The child] should not be subjected any longer to '"yo-yo"-ing in and out of [the mother's] care. The pattern of return and removal is extremely harmful, especially to young children.

The court accordingly granted the State's petition to terminate the mother's parental rights under Iowa Code section 232.116(1)(g), (h), and (l) (2024). The mother appeals.

## II.     Analysis

"Termination proceedings are reviewed de novo." *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). In this de novo review, we use a three-step analysis that asks whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *Id.*; *see also* Iowa Code § 232.116(1)–(3). If all three steps support termination, we then consider any other issues the parent raises, such as whether more time should have been granted. *See* Iowa Code §§ 232.104(2)(b), 232.117(5). The mother challenges each step in this analysis and requests more time for reunification.

### A.     Statutory Grounds

When the juvenile court terminates parental rights on more than one ground, as it did here, we may affirm the court's order on any ground we find supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to focus on section 232.116(1)(h).

The mother's challenge to that ground is limited to its final element—that the child could not be safely returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h) (requiring clear and convincing evidence "that the child cannot be returned to the custody of the child's parents"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). The mother argues

that because she was in an inpatient treatment facility, sober, and having overnight visits, "the child could immediately be returned to her care." We disagree—though we applaud the mother for the progress she made in her decades-long battle against her addiction to methamphetamine.

The department's case manager testified that the concern with the child being returned to the mother's care "would not be his immediate safety while he's at treatment because he would be safe there. It would be the concern about [the mother's] stability in the sobriety and him being able to remain in her care without having to be removed again." The case manager continued, "we would definitely need to see consistency of maintaining that sobriety and doing well in treatment" before considering returning the child to the mother's custody. As our supreme court concluded in *In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021): "A long history of substance abuse, repeated relapses, and demonstrated inability to maintain sobriety outside a supervised setting demonstrates the child[] could not have been returned to [the mother's] care at the time of the termination hearing." We accordingly find clear and convincing evidence supported termination under section 232.116(1)(f).

### B. Best Interests

The mother combines the second and third steps of our analysis by arguing that because of her "bond with the child the Court errored in finding termination was in the child's best interest." Because these are two separate issues, we will address them that way, starting with the child's best interests. *See In re A.A.*, No. 21-1972, 2022 WL 946503, at *3 (Iowa Ct. App. Mar. 30, 2022) ("We choose to separately address the often-conflated best-interests and statutory-exception

arguments."); *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023) ("Consideration of the parent-child bond is not a part of our best-interests analysis.").

On that question, Iowa Code section 232.116(2) directs us to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." The defining elements of a child's best interests are safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). While the law "requires a 'full measure of patience with troubled parents who attempt to remedy a lack of parenting skills,'" Iowa has built this patience into the statutory scheme of Iowa Code section 232. *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (citation omitted).

From the beginning of this case, the department afforded the mother that patience—allowing the child to stay in her custody even after positive drug tests, relapses, and missed substance-use treatment sessions. Despite the department's efforts, which resulted in the mother being given nearly two years to address her methamphetamine use, the juvenile court found "that process has only just begun over the last forty-one days, in a highly structured environment." Meanwhile, the child was being well-cared for in his foster home, which had been part of his life since birth and is "able to meet his long-term needs for safety, love, and security." *See* Iowa Code § 232.116(2)(b) (considering the child's integration into the foster family); *accord W.M.*, 957 N.W.2d at 314. We agree with the court upon our de novo review of the record that this young child "should not have to wait any longer for permanency." *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)

(reiterating the well-settled rule that, where statutory grounds for termination exist, permanency should not be denied based on a sheer hope that the parent might someday provide a stable home).

### C.    Permissive Exception

The permissive exception under Iowa Code section 232.116(3)(c) allows the court to maintain a parent-child relationship if it finds "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) ("We may use our discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." (cleaned up)). Once the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception in section 232.116(3). *Id.*

The record before us is filled with evidence about the bond the mother shares with her child, who was always happy to see her and sad to leave. The provider who supervised the mother's visits told the juvenile court that she was testifying for the mother because the child's "voice needs to be heard." The provider testified the child "has a very close bond with his mom," explaining:

> When I pick up [the child], [the mother is] the only client I have who climbs in the back. She never sits up front by me. She sits by her son. He is happy to the point—the only word I can use is "giddy" when he sees his mother. . . . And when it's time to part and I pick up the diaper bag, [the child] throws himself on the floor and cries. . . . "[I]t is heart-wrenching to hear him cry because he wants to be with his mom.

The juvenile court found this evidence "emotionally compelling," as do we, but determined the strength of the bond was outweighed by the child's need for

permanency and the mother's "inability to safely parent by properly addressing her methamphetamine use disorder and her need for long term sobriety." We agree. Even though the mother and child have an unquestionable bond, "the existence of a bond is not enough." *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). Given the child's young age and the mother's newfound sobriety after decades of use, we affirm the court's decision not to apply the permissive exception to termination under section 232.116(3)(c). *See In re N.S.*, No. 24-0750, 2024 WL 3290380, at *2 (Iowa Ct. App. July 3, 2024).

### D. Additional Time

The mother requested a six-month extension at the combined permanency and termination hearing. The juvenile court denied this request because "based on [the mother's] long history of using illegal substances, and her struggle to achieve sobriety, the Court cannot say the need for removal will no longer exist in six months." The mother claims the court erred in denying her request because of "her progress since June of 2024, and the fact that she had already moved to overnights with the child."

An extension of time is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The mother candidly testified that she has used methamphetamine "a long time. Over half my life." She had successfully completed inpatient substance-use treatment before, only to relapse again. And she was only six weeks into her current program at the termination hearing. So while the mother vowed that she was done with the drug, we agree with the juvenile court that she "will 'need a significant amount of time to establish' that she can

maintain her progress." *See N.S.*, 2024 WL 3290380, at \*2 (citing *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Given [the father's] past performance we are not convinced additional time or services will change him.")); *In re M.T.*, No. 24-1009, 2024 WL 4502261, at \*2–4 (Iowa Ct. App. Oct. 16, 2024) (finding progress comes too late when the mother starts treatment and maintains sobriety for ten months in a treatment facility because of her long history of methamphetamine use). We accordingly affirm the juvenile court's denial of her requested extension. In doing so, we echo the court's hope for the mother that she "continues to build on the good progress she has already made."

For these reasons, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**